IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DEBRA BLACK; EARL BLACK, Administrators of the Estate of DERECK E. BLACK, | ) ) ) ) | Civil Action No. 2:13-00179 |
| Plaintiffs, | ) ) ) ) ) | District Judge David Stewart Cercone Magistrate Judge Cynthia Reed Eddy |
| v. | ) ) | |
| ALLEGHENY COUNTY; ALLEGHENY COUNTY CORR. SERVICES; WILLIAM S. STICKMAN, III; DANA PHILLIPS; MICHAEL PATTERSON, M.D.; LUCILLE AIKEN, M.D.; KIM WILSON, M.D.; TRACY HARTEL, R.N.; CHRIS MARSH, R.N.; VALERY SLEPSKY; MEDICAL STAFF JOHN AND JANE DOES No. 1-15; CORRECTIONAL STAFF JOHN AND JANE DOES No. 1-15, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**

**I. RECOMMENDATION**

This is a civil rights action brought pursuant to 42 U.S.C. § 1983 and the Eighth Amendment to the United States Constitution by Debra and Earl Black ("Plaintiffs" or "the Blacks") as administrators of the estate of Derek E. Black ("Decedent"). Pending is a Motion to Dismiss the First Amended Complaint filed on behalf of Defendants Allegheny County ("the County"), and William S. Stickman, III, ("Stickman"). It is respectfully recommended that this Motion [ECF No. 29] be denied.

## II. REPORT

**Background**

According to Plaintiffs, the "[d]ecedent died on May 6, 2012 as a result of inadequate medical care rendered by the several defendants while he was an inmate at the Allegheny County Jail . . . as a result of ailments his physicians at UPMC Mercy Hospital later stated were 'left untreated.'" [ECF No. 25 at ¶2].

Prior to his death, Decedent was housed in the 4C block of the Allegheny County Jail ('the Jail"). On or after April 16, 2012, he was transferred to block 8E, solitary confinement, after being injured in an altercation with another inmate. [Id. at ¶29]. The "Segregation Log" maintained by Allegheny Correctional Health Services, Inc. ("ACHS") allegedly shows that on April 19, 2012, Decedent was coughing up blood-tinged sputum and an ACHS "Request for Medical Staff Attention" indicates that Decedent was coughing and experiencing mile chest discomfort. [Id. at ¶¶31, 32]. Plaintiffs assert that between April 16 and April 30, Decedent repeatedly requested medical assistance. On an unspecified date, he spoke with Sherry Anderson, R.N., who was assigned to dispense medicines on 8E, telling her that corrections officers had made multiple calls to the infirmary on his behalf, but that he had not been seen. [Id. at ¶33]. When her shift ended, Anderson visited the infirmary, and had Decedent's name placed on the priority list. [Id. at ¶37]. Despite Anderson's action and further calls to the infirmary by corrections officers, Decedent still was not seen.

On a date again unspecified, corrections officers spoke to nurse Chris Marsh, an ACHS employee, who sent medical assistant Valerie Slepsky ("Slepsky") to assess Decedent's condition. According to Plaintiffs, Slepsky lacked the education and skill to evaluate Decedent,

and determined that he was "faking." [Id. at ¶¶40-44]. Decedent was seen by an unidentified member of the medical staff on April 28, 2012, after writing, in a request for medical attention, that when breathing he had "sharp pain . . . right below [his] rib cage." [Id. at ¶ 45]. Decedent stated, "It might be my lung or a mus[c]le . . . It hurts so bad sometime I see all white." [Id.]. He was seen that day, but medical records do not verify that he received treatment. [Id. at ¶¶ 46-47]. On April 29, 2012, Decedent completed another medical request form on which he wrote, "I have a terrible pain in my chest," and "[i]t hurts so bad I pass out." [Id. at 48]. Decedent was not seen until the next day, when he was sent to the hospital. [Id. at ¶¶ 49-50].

Plaintiffs allege that during the next four days in the hospital, Decedent was resuscitated twice, underwent surgical placement of chest tubes, was intubated, and placed on a ventilator. [Id. at ¶¶ 51-53]. Hospital records dated May 5, 2012, allegedly show that Decedent had suffered anoxic brain damage. [Id. at ¶55]. He died the next day "as a result of one or more pulmonary conditions, including complicated effusion, epymema, prior injury, or pneumonia, which, according to the Mercy Hospital records, were 'left untreated' by the named Defendants prior to Decedent's admission . . . ." [Id. at ¶57].

Plaintiffs filed a single count Complaint [ECF No.1] on February 1, 2013, alleging Eighth Amendment violations. Defendants Stickman and the County filed a Motion to Dismiss [ECF No. 16], which was rendered moot when Plaintiffs filed the First Amended Complaint. The Court now considers these Defendants' second Motion to Dismiss.[1]

Allegations Involving Stickman and the County

In the Amended Complaint, Plaintiffs allege: "Upon information and belief, the policymaking and policy enforcing agents of the Allegheny County Jail . . . including

---
[1] A separate "Motion to Dismiss" which is, in actuality, a Motion to Strike pursuant to Fed. R. Civ. P. 12(f), has been filed on behalf of the remaining Defendants [ECF No. 32] is addressed in a separate Order.

3

[Stickman], . . . maintained a custom and policy of not transferring inmates to the infirmary in an effort to reduce costs [ECF No. 25 at ¶59]. They also "maintained a custom and policy of not transferring inmates from the infirmary to an outside hospital in an effort to reduce costs," [id. at ¶60], and "an informal custom or policy of limiting inmate hospitalizations." [Id. at ¶ 61]. Plaintiffs state: "It was not objectively reasonable for the Defendants to ignore Decedent's medical problems and his requests for medical aid, or for them to refuse to provide him with necessary medical treatment." [Id. at 72]. "Defendants' actions demonstrate a deliberate indifference to Decedent's serious medical needs." [Id.]. Plaintiffs further allege that the County and Stickman, among others, "are directly responsible for [the alleged Eighth Amendment violation]." [Id. at ¶ 80]. This is because they "through express policy or practice and/ or the inactions of their policymaking agents, had a policy or practice of intentionally failing to provide adequate medical care to their inmates, which policy led directly to Decedent's death from an untreated medical condition." [Id. at 81]. Last, Plaintiffs allege generally that Decedent's condition was untreated due to "the deliberate indifference of those who were charged with providing for his medical needs," [id. at 85], and that "Decedent's death was a direct result of the aforesaid policies and deliberate indifference of those who were charged with providing for his medical needs during his incarceration . . . ." [Id. at ¶86].

**Standard of Review**

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) challenges the legal sufficiency of a complaint. The United States Supreme Court has instructed that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted).

4

In evaluating a motion to dismiss, the Court must accept as true all well-pleaded facts and allegations and draw all reasonable inferences therefrom in favor of Plaintiffs. See Iqbal, 556 U.S. 662 (2009); Twombly, 550 U.S. at 555. The "factual allegations must be enough to raise a right to relief above the speculative level." Id. The Supreme Court clarified this requirement, stating that "only a complaint that states a plausible claim for relief survives a motion to dismiss." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556). The showing required to overcome a motion to dismiss must establish "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557). "This 'plausibility' analysis is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009) (quoting Iqbal, 556 U.S. at 679)).

After Iqbal, the United States Court of Appeals for the Third Circuit directed that district courts conduct a three pronged analysis to determine the sufficiency of a complaint. First, the Court must "tak[e] note of the elements a plaintiff must plead to state a claim." Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (quoting Iqbal, 556 U.S. at 679). Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth" Id. Third, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Id.

**Discussion**

Adequacy of the Complaint

In order to state an Eighth Amendment claim for inadequate medical care, a plaintiff "must point to evidence that demonstrates both (1) a serious medical need, and (2) acts or omissions by prison officials that indicate deliberate indifference to that need." Walker v. Walsh, No. 3:11-CV-1750, 2012 WL 314883 at *2 (M.D. Pa. Feb. 1, 2012), citing Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir.1999). As to prison officials, deliberate indifference requires "a showing that the official was subjectively aware" of an excessive risk to plaintiff's health and safety, and disregarded that risk. Farmer v. Brennan, 511 U.S. 825, 829 (1994).

It is undisputed that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable, and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." Baraka v. McGreevey, 481 F.3d 187, 210 (3d Cir. 2007). The Defendants' liability for violations of section 1983 is explained by the decision of the United States Supreme Court in Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658 (1978). There, the Court held that municipalities and local government entities are "persons" subject to liability under 42 U.S.C. § 1983, though liability cannot be premised on the mere fact that the alleged offender was a government employee, i.e., via application of the doctrine of respondeat superior. Instead, the Court concluded that a governmental unit may be liable under section 1983 only when its "policy" or "custom," whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, directly inflicted the injury. Id. at 694. See also A v. Nutter, 737 F. Supp.2d 341, 361 (E.D. 2010) (quoting Andrews v. Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990)). The "official policy" requirement distinguishes acts of the municipality from those of

6

municipal employees, thereby limiting liability to action for which the municipality itself is responsible, i.e., acts that the municipality has officially sanctioned or ordered. Id. In addition, imposition of municipal liability requires a showing of causation. A Plaintiff must demonstrate a "plausible nexus" or "affirmative link" between the municipality's custom or policy and the constitutional deprivation at issue. Bd. of Cnty. Com'rs of Bryan Cnty. Okl. v. Brown, 520 U.S. 397, 405 (1997).

Here, Plaintiffs have clearly pled policy and/or custom claims against Stickman as a policymaker for the County. [ECF No. 25 at ¶¶ 59, 61, 62, 64, 81, 82], and have included an allegation regarding causation. [ECF No. 57]. The facts of this case, and the arguments raised by Stickman and the County are virtually identical to those considered by the District Court in Shultz v. Allegheny Cnty., 835 F. Supp.2d 14 (W.D. Pa. 2011). There, the Court rejected "[t]he moving defendants' implicit contention that pointing to a policy of implementing cost savings fails to satisfy the threshold requirement needed to plead an adequate claim." Id. at 23. In so doing, the Court recognized the United States Court of Appeals' position in Winslow v. Prison Health Servs., 406 Fed. Appx. 671, 674 (3d Cir. 2011) that "the naked assertion that a defendant considered or operated based on an effort to contain costs does not set forth an adequate factual basis to support a claim predicated on deliberate indifference." Schultz, 835 F. Supp. 2d at 22. The District Court continued:

> When pleading that necessary medical treatment was delayed for non-medical reasons, a plaintiff may not offer conclusory allegations such as a 'policy was in place to cut costs' without providing some indication of (1) what the relevant policies were, (2) what basis the plaintiff has for thinking that 'policies to save money' affected the relevant medical treatment, or (3) what specific treatment was denied as a result of these policies. In other words, 'prisoners do not have a constitutional right to limitless medical care, free of the cost constraints under which law-abiding citizens receive treatment.'

7

Id. (quoting Winslow, 406 Fed. Appx. at 674-75) (interior citation omitted). In Schultz, the District Court found:

> [A] number of reasonable inferences could be drawn in plaintiff[s'] favor given the factual averments and concomitant context and setting. [The decedent's] condition, evidenced by [his] subsequent death, was serious and the facts alleged and the reasonable inferences drawn therefrom are enough to nudge the Eighth Amendment claim across the line between a possible and plausible claim for relief. In other words, at this juncture the complaint sets forth a plausible showing of entitlement to relief and there exists "a reasonably founded hope that the [discovery] process will reveal relevant evidence to support the claim"

Id. (quoting Twombly, 550 U.S. at 563 n.8).

This Court finds that the same inferences may be drawn here. Decedent began coughing up bloody sputum as early as April 16, 2012. The Amended Complaint alleges that despite repeated calls by corrections officers to the Jail infirmary on his behalf, and Decedent's complaints to medical personnel that his condition was worsening and he was in pain severe enough that he lost consciousness, he was seen twice but did not receive treatment. He was not taken to the Jail infirmary until April 30th, and was transferred directly to the hospital. Despite extremely aggressive medical treatment, he died six days later. According to hospital records, Decedent died due to Defendants' failure to provide him with adequate medical treatment. Plaintiffs allege that Defendants were aware that similar severe lapses in medical care had occurred in the past, yet willfully failed to correct circumstances leading to those lapses. [Id. at ¶¶60, 65, 83]. Because of its markedly similar facts, and persuasive reasoning, the Court adopts the following statement made by the District Court in Shultz as its finding in this matter:

> Because there are allegations of actual knowledge through express policy formation and/or through inaction in the face of established practices and prior incidents of constitutionally deficient care to

> detainees, the alleged factual matter, when taken as true, raises a plausible basis for establishing liability against [Defendants].

Id. at 24.[2]

Stickman's Entitlement to Qualified Immunity

The Court also rejects Stickman's contention that he is, at this point, entitled to qualified immunity. "The doctrine of qualified immunity shields government officials performing discretionary functions 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Miller v. Clinton Cnty., 544 F.3d 542, 547 (3d Cir. 2008) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). It is important that this issue be addressed as early as

---

[2] See also Gioffre v. Cnty. Of Bucks, Civil Action No. 08-4342, 2009 WL 3617742 (E.D. Pa. Nov. 2, 2009). There, Plaintiffs. Representatives of a deceased former inmate at the Bucks County Correctional Facility alleged that the inmate had died of MRSA and withdrawal from narcotics after delayed transfer to a hospital. Plaintiffs contended that the inmate's death was a consequence of a County custom, practice, or policy of failing to provide necessary medical care to inmates. Id. at *1. The purpose behind this practice, policy or custom was said to have been cost reduction. Plaintiffs also alleged that Defendants were on notice of the constitutionally insufficient practices at the facility as the result of complaints from inmates, court rulings, reports, and other unspecified information. Id. at *3. In denying Defendant administrators' Motion to Dismiss, the District Court wrote:

> [T]he Complaint alleges a problematic practice or policy, known to and ratified by Defendants, of denying medical care for cost-saving reasons. The Complaint also alleges that Defendant learned of these alleged unconstitutional conditions, but that with deliberate indifference, they failed to remedy the situation. These details regarding the motive for the practice or policy of denying inmates medical treatment and the means through which the Defendants learned of the alleged unconstitutional conditions elevate the Complaint, perhaps only barely, from being merely a blanket, general assertion of entitlement to relief.

Id. at *4. The Court concluded: "[W]hile the allegations as to Defendants are minimal and discovery eventually may establish that no such constitutionally impermissible practices or policies existed, the allegations are sufficient at this stage to put Defendants fairly on notice of the claims against them." Id. at *5. This Court finds the same to be true in this matter.

9

possible in the litigation as "[q]ualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'" Bennett v. Murphy, 274 F.3d 133, 136 (2002) (citation omitted).

A defendant's entitlement to qualified immunity is governed by the two-part test articulated in Saucier v. Katz, 533 U.S. 194 (2001). The Court must determine whether, in the light most favorable to the injured party, the conduct alleged violated a constitutional right. Id. at 201. In the absence of a violation, no further inquiry is required; the official is entitled to qualified immunity. If a constitutional violation is alleged, the Court must also consider "whether the right was clearly established . . . in light of the specific context of the case, not as a broad general proposition." Id. A right is "clearly established if "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. These two analytical prongs may, in the Court's discretion, be addressed in either order. See Pearson v. Callahan, 555 U.S. 223, 236 (2009).

As the Court has already observed, Plaintiffs have stated a constitutional claim against Stickman. As the Court has noted, Plaintiffs allege that Stickman is liable for formulating, approving, or tolerating a policy and/or practice of not providing adequate medical care to Jail inmates. The Court finds, too, that the law governing this claim had been well established for more than thirty-five years at the time of the alleged wrongs. "The duty of the state 'to provide medical care for those who it is punishing by incarceration" has been recognized by the United States Supreme Court since 1976. Estelle v. Gamble, 429 U.S. 97, 103 (1976). The Court recommends that qualified immunity be denied at this point in the litigation. The issue may be revisited should this matter proceed to summary judgment.

## III. CONCLUSION

For the reasons set out above, it is respectfully recommended that the Motion to Dismiss filed on behalf of Stickman and the County [ECF No. 29] be denied. It is further recommended that Stickman be denied qualified immunity at this point in the proceedings.

In accordance with the Magistrate's Act, 28 U.S.C. § 636 (b)(1)(B) and (C), and Rule 72.D.2 of the Local Rules for Magistrates, objections to this Report and Recommendation must be filed by June 24, 2013. Failure to file timely objections will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193 n.7 (3d Cir. 2011). Any response to objections is due July 5, 2013.

June 10, 2013.

Respectfully submitted,

Cynthia Reed Eddy
United States Magistrate Judge

cc: Counsel of Record via CM-ECF