IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DEBRA BLACK; EARL BLACK,　　　　　)
*Administrators of the Estate of*　　　　　)
DEREK E. BLACK,　　　　　　　　　)
　　　　　　　　　　　　　　　　)
　　　　　Plaintiffs,　　　　　　　)
　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　)
　　v.　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　)　　Civil Action No. 2:13-cv-0179
　　　　　　　　　　　　　　　　)
ALLEGHENY COUNTY; ALLEGHENY　)　　United States Magistrate Judge
CORRECTIONAL HEALTHSERVICES;　)　　Cynthia Reed Eddy[1]
WILLIAM STICKMAN, III; DANA　　)
PHILLIPS; MICHAEL PATTERSON, M.D.;　)
KIM MIKE-WILSON, R.N.; CHRIS　)
MARSH, R.N.; VALERIE SLEPSKY,　)
　　　　　　　　　　　　　　　　)
　　　　　Defendants.　　　　　)

**MEMORANDUM OPINION**

## I.　INTRODUCTION

Plaintiffs Debra and Earl Black ("Plaintiffs") initiated this action against the above-captioned Defendants under 42 U.S.C. § 1983 seeking damages for the death of their son, Derek E. Black ("Black"). Plaintiffs assert that pursuant to the Eighth Amendment of the United States Constitution, Defendants unconstitutionally deprived Black of adequate medical care while he was confined at the Allegheny County Jail ("ACJ" or "the jail"), which resulted in his death. Presently before the Court are two motions for summary judgment filed by the Defendants. The first motion was filed by Allegheny County and William Stickman, III (collectively "County

---

[1] By consent of the parties, (ECF Nos. 18, 23, 228), and pursuant to 28 U.S.C. § 636(c), the undersigned has full "authority over dispositive motions … and entry of final judgment, all without district court review." *Roell v. Withrow*, 538 U.S. 580, 585 (2003); *In re Search of Scranton Hous. Auth.*, 487 F.Supp.2d 530, 535 (M.D. Pa. 2007).

Defendants"). (ECF No. 187). The second motion was filed by Allegheny Correctional Health Services; Dana Phillips; Dr. Michael Patterson; Dr. Miguel Solomon[2]; Kimberly Mike-Wilson, R.N.; Chris Marsh, R.N.; and Valerie Slepsky (collectively "Medical Defendants"). (ECF No. 190).

For the reasons which follow, the County Defendants' motion for summary judgment will be granted as to Warden Stickman and denied as to Allegheny County. The majority of the Medical Defendants' motion for summary judgment will denied but the motion will be granted insofar as certain claims of Plaintiffs' will be dismissed.

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Because the Court writes only for the parties, who are quite familiar with the facts and circumstances of this case, the court will not recite all of the relevant facts, but only so much of the operative facts as necessary to place the Court's rulings and analysis in context.

At all relevant times, Allegheny County had a contract with Allegheny Correctional Health Services ("ACHS") to provide medical care to inmates in the jail. On April 2, 2012, Black, an inmate at the jail, was given a history and physical examination. Two weeks later, on April 16, 2012, Black was involved in a physical altercation with another inmate.[3] Black was evaluated by ACHS medical personnel, who determined that Black sustained small scratches to his left elbow and injuries to the left side of his trunk. ACHS determined that Black had no

---

[2] The Medical Defendants state that this Defendant is incorrectly identified by Plaintiffs and that his last name is "Salomon." (ECF No. 190 n. 2). They have filed other documents with the Court indicating the same. *See* (ECF Nos. 154, 172). However, they have not taken any steps to amend or correct the caption and continue to point this out in footnotes despite the Court previously commenting on this specific issue. (ECF No. 175 n. 1). Therefore, because this Defendant appears in the Second Amended Complaint as Dr. Solomon and the Medical Defendants have not taken the requisite steps to change the caption, the Court will refer to him as Dr. Solomon.

[3] Both the County Defendants and the Medical Defendants assert that Black was in a "fight" with another inmate while Plaintiffs contend that Black was assaulted.

active bleeding. He was given an x-ray of his left elbow due to tenderness, which was negative for fractures or similar problems, was prescribed Motrin for five days, and given bandages for his scratches. Black was then sent to the disciplinary housing unit ("DHU") because of the altercation with the other inmate.

On April 19, 2012, Black was provided bandages and bacitracin in connection with the scratches/wounds on his elbow. Black complained to medical personnel of blood-tinged sputum, a cough, and mild chest discomfort, however, ACHS determined that Black was in no acute distress. Black was given Motrin and Robitussin. On April 21, 2012, Black complained to medical personnel that he had a seizure the night before.[4]

Defendant Dr. Michael Patterson signed a record dated April 27, 2012 which states that Black had possible right-sided pneumothorax (collapsed lung). On April 28, 2012, Black completed a sick call slip in which he requested medical care, stating the following: "Every time I breath [sic] I have a sharp pain shots [sic] right below my rib cage. It might be my lung or a musle. [sic] My back and chest. It hurts so bad sometimes I see all white start sweating. Pass out in bed. Please help." This medical record indicates that Black was "seen 4/28/12 in infirmary" and "seen 4/30/12." Progress notes also indicate that on April 28, 2012, a Corrections Officer ("C.O.") called ACHS stating that Black "hit button in cell + stated he had a 'seizure.'" According to this section of the progress note, which was signed by Defendant Valerie Slepsky, Black "arrived in infirmary by own power" and he stated he was "having side pain in rib area" and his vitals were "stable." The note also says "Per Dr. Solomon [follow-up] 4/30/12 in clinic." Dr. Solomon signed this note, but denies ever ordering follow-up treatment or evaluating Black.

---

[4]  The County Defendants' concise statement of undisputed material facts states that on April 22, 2012, ACHS personnel determined that Black's scratches/wounds had healed. (ECF No. 189 at 4, ¶ 20). However, the document they cite does not support this statement, and Plaintiffs did not address this statement in their counter statement of facts. (ECF No. 204 at ¶ 20).

Further, Plaintiffs dispute that Black was ever examined in the infirmary on April 28, 2012, asserting that Slepsky and Defendant Chris Marsh falsified these medical records.

On April 29, 2012 Black completed a sick call slip, providing "I have a terrible pain in my chest. I think I pulled by hurrnia [sic] rite [sic] below my rib cage. And a musle [sic] in my back hurts. Everytime [sic] I breath [sic] it pulls. It hurt so bad I pass out."

Black was evaluated by ACHS personnel in the infirmary on April 30, 2012. The aforementioned progress notes state that on April 30, 2012, Black denied "seizure activity on 4/28/12. Wanted to get to medical. Was working out on Friday [4/27/12] (wide pull ups) + felt twinge. Hours later [right] sided rib pain …" ACHS personnel ordered an x-ray and determined that Black had "probable pneumothorax." Black was sent to the emergency room of UPMC Mercy Hospital ("Mercy") via ambulance. This note was signed by Defendant Dr. Michael Patterson. The progress notes state that Black was in "stable condition" when he went to the emergency room, however, this conclusion is disputed by Plaintiffs. Black was diagnosed by Mercy personnel as having "1. Right lower lobe consolidation with loculated findings, most likely pneumonia[;] 2. Tachypnea, resolved[; and] 3. Chest pain" with a disposition of "[a]dmit[ted] to a monitored bed in medically stable but guarded condition." On May 2, 2012, Black had cardiac arrest and acute respiratory failure at Mercy and was admitted to the Intensive Care Unit. In the following days, Black received various medical evaluations, tests, and treatment. On May 6, 2012, Black was pronounced dead at Mercy.

This action was commenced on February 1, 2013. Discovery was contentious and included a show cause hearing, motions for sanctions and hearings in connection therewith, motions to strike, and motions to compel. The period to complete discovery was enlarged. The unwillingness of counsel to cooperate resulted in wasted time and expense for both the parties

and the Court, and it served as a distraction to the seriousness of the underlying allegations at issue. At the close of discovery, with permission from the Court, Plaintiffs amended their complaint for the second time. (ECF No. 140). Thereafter, the County Defendants and the Medical Defendants both moved for summary judgment.[5] (ECF Nos. 187, 190). The motions have been fully briefed and are ripe for disposition.

## III.    STANDARD OF REVIEW

### A.    Summary Judgment

Rule 56(a) provides that summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When applying this standard, the court must examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "A fact is material if it might affect the outcome of the suit under the governing law." *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013) (citing *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006)).

The non-moving party cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument, but must "put up or shut up." *Berckeley Inv. Group., Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006) (quoting *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109-10 (3d Cir. 1985)). Plaintiff must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also Saldana v. Kmart Corp.*,

---

[5]   In response to the Medical Defendants' motion for summary judgment, Plaintiffs filed a motion to strike the motion for summary judgment (ECF No. 210) and motion for sanctions (ECF No. 201). Both motions are currently pending before the Court and will be addressed in separate Orders.

260 F.3d 228, 232 (3d Cir. 2001). The non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005).

When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The inquiry, then, involves determining "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Brown v. Grabowski*, 922 F.2d 1097, 1111 (3d Cir. 1990), *cert. denied*, 501 U.S. 1218 (1991) (quoting *Anderson*, 477 U.S. at 251-52). "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." *Pignataro v. Port Auth. of N.Y. & N.J.*, 593 F.3d 265, 268 (3d Cir. 2010) (citing *Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 900 (3d Cir. 1997)).

A party claiming that a fact cannot be or is genuinely disputed must support that assertion either by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed.R.Civ.P. 56(c)(1).

A "party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed.R.Civ.P. 56(c)(2). An "affidavit

or declaration used to support or oppose a motion must be made on personal knowledge, set out

facts that would be admissible in evidence, and show that the affiant or declarant is competent to

testify on the matters stated." Fed.R.Civ.P. 56(c)(4).

It is the obligation of the parties to pinpoint specific portions of the record which they

argue support their characterizations of the material undisputed facts and their positions. Rule

56(e) provides:

> (e) Failing to Properly Support or Address a Fact. If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> (1) give an opportunity to properly support or address the fact;
>
> (2) consider the fact undisputed for purposes of the motion;
>
> (3) grant summary judgment if the motion and supporting materials-- including the facts considered undisputed--show that the movant is entitled to it; or
>
> (4) issue any other appropriate order.

Similarly but somewhat more pointedly, under our local rules, a motion for summary

judgment must be accompanied by "separately filed concise statement setting forth the facts

essential for the Court to decide the motion for summary judgment, which the moving party

contends are undisputed and material . . . . A party must cite to a particular pleading, deposition,

answer to interrogatory, admission on file or other part of the record supporting the party's

statement, acceptance, or denial of the material fact". LCvR 56.B.1. The same is required of a

plaintiff's responsive statement of material facts. LCvR 56.C.1. *See Bowman v. Mazur,* 2010 WL

2606291, *3 (W.D.Pa. 2010) ("Plaintiff's responsive statement of material facts is insufficient to

create a genuine issue of material fact because it failed to comply with Local Rule 56.1.C.1 . . .

by failing to cite to specific portions of the record in support of his responsive concise statement

of facts." Court therefore ignored Plaintiff's denials in his responsive statement of material facts and deemed "admitted those very facts that he sought to deny.").

"It is not for the court to search through the record . . . to find support for the plaintiff's purported facts; that burden lies with the plaintiff in responding to the defendant's materials." *Murray v. JELD-WEN, Inc.*, 922 F.Supp.2d 497, 503 (M.D.Pa. 2013). More colorfully, it has often been stated that "judges are not like pigs, hunting for truffles buried in briefs" and that, if factual support for a party's claims or defenses exist in the record, it is incumbent on the party to direct the District Court's attention to those facts. *DeShields v. Int'l Resort Prop. Ltd.,* 463 Fed.App'x 117, 120 (3d Cir. 2012) (quoting *United States v. Starnes*, 583 F.3d 196, 216 (3d Cir. 2009) and *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)).

The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. *Celotex*, 477 U.S. at 322; *UPMC Health Sys. v. Metropolitan Life Ins. Co.*, 391 F.3d 497, 502 (3d Cir. 2004). The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. *Williams v. Bor. of West Chester*, 891 F.2d 458, 460–461 (3d Cir. 1989) (non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment).

### B.    Deliberate Indifference

"Under the Eighth Amendment, prison officials, from the bottom up, may be liable if by act or omission they display a deliberate indifference to a known risk of substantial harm to an inmate's health or safety." *Barkes v. First Correctional Medical, Inc.*, 766 F.3d 307, 322 (3d Cir. 2014) (citing *Farmer v. Brennan*, 511 U.S. 825, 843 (1994)).  The Eighth Amendment protects individuals against the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII.

This protection, enforced against the states through the Fourteenth Amendment, guarantees incarcerated persons humane conditions of confinement. In this regard, prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must "take reasonable measures to guarantee the safety of the inmates." *Farmer*, 511 U.S. at 832 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)).

In the seminal *Estelle* decision, *Estelle v. Gamble*, 429 U.S. 97 (1978), the Supreme Court of the United States explained why this minimum medical care is constitutionally required:

> The Amendment embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency ..., against which we must evaluate penal measures. Thus, we have held repugnant to the Eighth Amendment punishments which are incompatible with the evolving standards of decency that mark the progress of a maturing society ... or which involve the unnecessary and wanton infliction of pain ....
>
> These elementary principles establish the government's obligation to provide medical care for those whom it is punishing by incarceration. An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. In the worst cases, such a failure may actually produce physical torture or a lingering death ..., the evils of most immediate concern to the drafters of the Amendment. In less serious cases, denial of medical care may result in pain and suffering which no one suggests would serve any penological purpose.... The infliction of such unnecessary suffering is inconsistent with contemporary standards of decency ....

*Estelle*, 429 U.S. at 102–03 (citations and internal quotation marks omitted).

However, "every claim by a prisoner that he has not received adequate medical treatment [is not] a violation of the Eighth Amendment.... [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment...." *Id.* at 105–06 (citations and internal quotation marks omitted).

"Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id.* at 106. In order to make out a prima facie case that a prison official or medical provider's rendering of medical care and treatment, or failure to do so, violates the Eighth Amendment's prohibition against cruel and unusual punishment, an inmate must show two elements: (1) plaintiff was suffering from a "serious medical need," and (2) a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. *Id.*; *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

The first showing requires the court to objectively determine whether the medical need was "sufficiently serious." A medical need is "serious" if it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Gaudreault v. Mun. of Salem*, 923 F.2d 203, 208 (1st Cir.1990), cert. denied, 500 U.S. 956 (1991); *Monmouth County Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987), *cert. denied*, 486 U.S. 1006 (1988).

The second prong requires a court subjectively to determine whether the officials acted with a sufficiently culpable state of mind. Deliberate indifference may be manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, a denial of prescribed medical treatment, or a denial of reasonable requests for treatment that results in suffering or risk of injury. *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993). As summarized more fully by the Court of Appeals for the Third Circuit:

> This Court has concluded that the standard is met when prison officials 1) deny reasonable requests for medical treatment, and the denial exposes the inmate to undue suffering or the threat of tangible residual injury, 2) delay necessary medical treatment for non-medical reasons, or 3) prevent an inmate from receiving recommended treatment for serious medical needs, or deny access to a physician capable of evaluating the need for treatment. *See Monmouth v. Lanzaro*, 834 F.2d 326, 346–47 (3d Cir.1987); see also *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir.1993). We have also held that prison officials who continue a course of

treatment they know is painful, ineffective, or entails a substantial risk of serious harm act with deliberate indifference ...

*Whooten v. Bussanich*, 248 F.App'x 324, 326–27 (3d Cir.2007) (additional citations omitted) (prison officials' delay in referring Plaintiff to neurologist for cluster headaches and refusal to follow recommended treatment plan after Plaintiff eventually saw neurologist was based upon prisoner's past drug addiction, of which neurologist was unaware; the delay and denial of requested treatment presented a question of negligence, not deliberate indifference).

## IV. DISCUSSION

### A. County Defendants' Motion for Summary Judgment (ECF No. 187)

#### 1. Warden Stickman

The County Defendants contend that William Stickman, III, an interim warden at ACJ during the relevant time period, is entitled to summary judgment, arguing that he was not personally involved in Black's death, he was not deliberately indifferent to Black's medical rights, and he is entitled to qualified immunity. (ECF No. 188 at 7-9). A supervisor may be found personally liable under § 1983 if it is established that he, "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'" *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d. Cir. 2004) (alteration in original) (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)). Additionally, "a supervisor may be personally liable . . . if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *Id.*; *see also Santiago v. Warminster Twp.*, 629 F.3d 121, 129 (3d Cir. 2010). *Respondeat superior* is not a basis for supervisory liability in § 1983 actions. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

In this Circuit, courts analyze supervisory liability under a framework set forth in *Sample v. Dieks*, 885 F.2d 1099 (3d Cir. 1989). Under *Sample*, the plaintiff must initially "identify a supervisory policy or practice that the supervisor failed to employ." *Barkes*, 766 F.3d at 317 (citing *Sample*, 885 F.2d at 1118). Next, the plaintiff must prove the following four elements:

(1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation;

(2) the defendant-official was aware that the policy created an unreasonable risk;

(3) the defendant-official was indifferent to that risk; and

(4) the constitutional injury was caused by the failure to implement the supervisory practice or procedure.

*Id.* This test "require[s] an official's subjective deliberate indifference."[6] *Id.* at 323.

At the outset, the Court notes that Plaintiffs have failed to meet the initial requirement of *Sample* because they have not identified a supervisory policy or practice that Stickman failed to employ. Although Plaintiffs argue that Stickman "fail[ed] to take constitutionally adequate steps to rectify the problems at the jail," (ECF No. 203 at 9-10), they do not identify what particular constitutionally adequate steps were necessary. Further, contrary to the allegations in the Second Amended Complaint, Plaintiffs have adduced no evidence suggesting that Stickman engaged in a policy or practice of intentionally failing to provide adequate medical care to inmates.[7]

---

[6] "To the extent that *Sample* approved, in some circumstances, an objective test for determining a prison official's Eighth Amendment deliberate indifference, that portion of *Sample* has been abrogated by *Farmer* [*v. Brennan*, 511 U.S. 825 (1994)]." *Barkes*, 766 F.3d at 323.

[7] Specifically, the Second Amended Complaint avers that Stickman, together with the other Defendants, engaged in practices of "unreasonable and inhumane limitations on admissions to the infirmary, assignment of untrained personnel to evaluate inmates, as well as limitations on inmate hospitalizations or discouragement of same in an effort to reduce medical costs at the expense of reasonable and proper standards of inmate medical care." (ECF No. 140 at ¶¶ 100-101). There are no facts to corroborate that Stickman was engaged in said practices.

In their response brief, Plaintiffs assert that Stickman is liable in this case based on the following:

> At his deposition, Stickman testified that he had regular meetings to become familiar with the way ACHS operated. Deposition of William Stickman ("Stickman Dep.") at 18:12-19. At first, the meetings were monthly, then bi-monthly and then every other month [sic]. Id. at 22:21-24. Stickman testified that he would walk around the jail "every day". Id. at 27:9-10. When he would walk around, it would be typical for Stickman to hear complaints from inmates. Id. at 26:20-27:1. Those complaints generally had to do with inadequate medical treatment. Id. at 27:2-8. Stickman testified that he was aware inmates would complain they were not being seen quick [sic] enough after a form was filled out requesting medical attention. Id. at 58:4-21.
>
> In some cases where an inmate was not being seen at all, despite submitting a form, Stickman would direct inmates to essentially resubmit the slip. Id. at 58:22-59:6. If the medical issue were [sic] "serious" in his estimation, Stickman would inform an officer to "call medical and things like that to remind them and tell them what's going on." Id. Stickman had no formal medical training. Id. at 57:10-14. Stickman also testified that he learned about Derek Black's death from Defendant Dana Phillips. Id. at 21.

(ECF No. 203 at 6).

Plaintiffs also assert that Stickman "essentially acquiesced to what he knew or should have known was constitutionally inadequate medical treatment at the facility" because he read about medical issues at the prison in the newspaper, although "he did not get specifics form the newspaper articles he read." (*Id.* at 6 n. 4). Therefore, Plaintiffs contend that "this Court should not grant summary judgment to Stickman simply because he turned a blind eye to the day to day operations of the prison as it related to medical care." (*Id.* at 7). The County Defendants, in their Reply Brief, counter that Stickman cannot be found to be deliberately indifferent based on general complaints from unidentified inmates about some unspecified medical care at some unspecified times. (ECF No. 215 at 3). They argue that Stickman was not deliberately indifferent because he received no complaints from or about Black and because Black was treated by medical personnel in the jail. (*Id.*).

The Court of Appeals recently emphasized in *Barkes* that it is irrelevant that a supervisor does not have "specific knowledge of any particular inmate or the failure of subordinate officials to treat that inmate's serious medical condition." *Barkes*, 766 F.3d at 324. This is because "[a] high-ranking prison official can expose an inmate to danger by failing to correct serious known deficiencies in the provision of medical care to the inmate population." *Id.* Thus, although Plaintiffs need not prove that Stickman was specifically aware of Black's particular need for medical attention, they must establish that Stickman had knowledge that inmates with similar conditions to Black were receiving inadequate medical treatment. *See Sample*, 885 F.2d at 1118 ("[D]eliberate indifference to a known risk will ordinarily be demonstrated by evidence that the supervisory official failed to respond appropriately in the face of an awareness of a *pattern of such injuries*." (emphasis added)).

Plaintiffs' assertion that Stickman should be found liable because he was aware of generalized complaints from unknown inmates about unspecified conditions and non-specific newspaper articles is insufficient to establish deliberate indifference. Notwithstanding an extensive amount of discovery, Plaintiffs have provided no evidence to suggest that Stickman knew that there were inmates in the prison coughing blood or displaying "classic" symptoms of pneumonia for several days without receiving the necessary treatment by appropriate medical personnel. Moreover, Plaintiffs offer no evidence that Stickman was aware that inmates with such symptoms or in such conditions were not being treated or receiving adequate medical care from ACHS.

In *Spruill v. Gillis*, 372 F.3d 218 (3d Cir. 2004), the Court of Appeals explained that

> If a prisoner is under the care of medical experts … , a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. This follows naturally from the division of labor within a prison. Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life

among guards, administrators, physicians, and so on. Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor. Moreover, under such a regime, non-medical officials could even have a perverse incentive *not* to delegate treatment responsibility to the very physicians most likely to be able to help prisoners, for fear of vicarious liability.

Accordingly, we conclude that, absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official ... will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference.

*Id.* at 236. Plaintiffs have offered no evidence to suggest that Stickman had reason to believe or was actually aware that inmates in a similar situation to Black were being mistreated or not treated by ACHS personnel. Therefore, Plaintiffs are unable to establish that Stickman was deliberately indifferent.[8]

Furthermore, Stickman is entitled to qualified immunity, which "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "In resolving questions of qualified immunity at summary judgment, courts engage in a two-pronged inquiry." *Tolan v. Cotton*, — U.S. —, 134 S. Ct. 1861, 1865 (2014). "The first asks whether the facts, taken in the light most favorable to the party asserting the injury, show the [official's] conduct violated a federal right." *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (internal quotation marks and alterations omitted)). "The second prong of the qualified-immunity analysis asks whether the right in question was 'clearly established' at the time of the violation." *Id.* (citing *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). District courts have discretion

---

[8] Plaintiffs also argue that summary judgment is inappropriate because "Stickman's own testimony indicates he was responsible for making policy in the county jail." (ECF No. 203 at 9). However, even assuming Stickman was a policymaker, this argument fails because Plaintiffs have not identified any policy that he created or was aware of that could have caused Black's death. Therefore, no genuine material issue of fact exists here, and this argument is rejected.

"in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236. Here, the County Defendants do not dispute that the right to receive adequate medical treatment in jail is a clearly established right. However, as discussed above, Plaintiffs are unable to establish that Stickman violated Black's rights under the Eight Amendment. Consequently, qualified immunity is appropriate for Stickman.

Based on the foregoing, Stickman is entitled to summary judgment.

2.  Allegheny County

The County Defendants argue that Allegheny County is also entitled to summary judgment because "Plaintiffs have not adduced any facts that could be considered significantly probative such that a reasonable juror could believe there was" "some type of official policy, custom, or practice that denied inmates medical care for financial reasons." (ECF No. 188 at 9).

Further, they argue that "Plaintiffs have not produced evidence that Derek Black was ever denied medical care for financial reasons – or, for that matter, as a result of any other alleged policy, custom or practice of Allegheny County." (*Id.*). The County Defendants contend that Black had access to medical care at the jail and that he received such care directly from ACHS personnel. (*Id.* at 10). However, Plaintiffs counter that Allegheny County's duty to provide constitutionally adequate medical care is non-delegable, and therefore, any unconstitutional policy of ACHS became an unconstitutional policy of Allegheny County.

"Contracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody, and it does not deprive the State's prisoners of the means to vindicate their Eighth Amendment rights." *West v. Atkins*, 487 U.S. 56 (1988). Here, Allegheny County "bore an affirmative obligation to provide adequate medical

care to [Black]" notwithstanding its contract with ACHS. *See id; see also Barkes,* 766 F.3d at 326-327 (hiring a private contractor to provide constitutionally required medical services does not abdicate the local government of those constitutional duties). As a result, Allegheny County "remains liable for any constitutional deprivations caused by the policies or customs of [ACHS]." *See Ancata v. Prison Health Services, Inc.*, 769 F.2d 700, 705 (11th Cir. 1985); *Johnson v. Stempler*, 373 F. App'x 151, 154 (3d Cir. 2010). In this regard, the policy of the private entity becomes the policy of the local government. Therefore, liability is based on the local government's *own* policy, and not *respondeat superior*. *Id.* (citing *Monell v. New York City Dep't of Soial. Services,* 436 U.S. 658, (1978)). Because, as discussed *infra*, there remain genuine issues of material fact preventing summary judgment for ACHS, the County Defendants are not entitled to summary judgment.[9]

### B.     Medical Defendants' Motion for Summary Judgment (ECF No. 190)

The Medical Defendants' motion for summary judgment, brief, and concise statement of undisputed material facts are replete with material factual disputes. They rely on deposition testimony from various Medical Defendants while ignoring contradictory deposition testimony from Plaintiffs' witness, Sherry Anderson, or other circumstantial evidence indicated in the medical records. Additionally, in some instances, they expressly acknowledge issues of fact and credibility. *See, e.g.,* (ECF No. 190 at ¶ 2.b.) ("Plaintiffs [sic] claim that ACHS allowed 'untrained personnel' to 'evaluate and opine on inmate's medical conditions' is factually untrue."); (*Id.* at ¶ 2.d.) ("Plaintiffs allege a policy of ignoring serious medical needs of inmates placed on the priority list. No such policy exists and Plaintiffs have not established it."); (ECF

---

[9] The County Defendants also assert that Plaintiffs' request for punitive damages is improper because municipalities are immune from punitive damages under § 1983. In their response, Plaintiffs concede that they are not entitled to punitive damages against Allegheny County.

No. 191 at 14)("With the exception of Sherry Anderson, a disgruntled former ACHS nurse represented by counsel for Plaintiffs in this matter, no individual can testify as to a policy of ignoring the priority list for inmates."); (ECF No. 192 at ¶ 7)("A complaint of blood tinged sputum is not necessarily a serious medical issue.").[10]

The Medical Defendants contend that "many of the individually named defendants had no personal participation in the events which are claimed to have caused a constitutional injury." (ECF No. 191 at 7). However, each of the Medical Defendants' alleged lack of involvement with Black was sufficiently contradicted by Plaintiffs for the present motion. *See A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.,* 372 F.3d 572, 581 (3d Cir. 2004) ("Once evidentiary proof is adduced, the issue of proximate cause is best left to the determination of the trier of fact."). The Court notes that while there are undoubtedly more factual disputes than those discussed below, the following adequately demonstrates why each Medical Defendant must remain in the case.

### 1. ACHS

ACHS is not entitled to summary judgment because there are genuine issues of fact as to whether Dana Phillips and Dr. Michael Patterson, two of its most senior officials, participated in or knew of and acquiesced to permanent and well-settled unconstitutional policies at ACHS. Specifically, Plaintiffs, through testimony of Sherry Anderson, contend that on multiple occasions, Phillips made medical decisions and interfered with inmates being sent out for outside treatment to reduce costs despite not being a doctor. Plaintiffs also contend, through testimony of Dr. Solomon, that "Dr. Patterson and everybody" established a practice of instructing

---

[10]   Moreover, the Court notes that the Medical Defendants filed a response (ECF No. 218) to Plaintiffs' motion to strike (ECF No. 210) the Medical Defendants' motion for summary judgment in which they concede that there are issues of credibility surrounding Sherry Anderson. *See* (ECF No. 218) ("She is a key witness for the Plaintiffs in this case. Her credibility is at issue and given the inconsistencies in her testimony, her credibility is suspect.").

physicians to sign progress notes of patients without ever examining them. Dr. Solomon testified that he was uncomfortable with this practice, however, he complied with it. *See Monmouth*, 834 F.2d at 347 ("[D]eliberate indifference is demonstrated '[w]hen … prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to physician capable of evaluating the need for such treatment.'"); *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990) ("Policy is made when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict. A course of conduct is considered to be "custom" when, though not authorized by law, such practices of state officials are so permanent and well settled as to virtually constitute law." (internal quotations, alterations, and citations omitted); *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) ("Custom … may also be established by knowledge and acquiescence."). Moreover, there is no "difference of constitutional import between state-employed and privately contracted medical staff," such as ACHS.[11] *See Barkes*, 766 F.3d at 327.

The Court notes, however, that Plaintiffs' assertions that ACHS maintained unconstitutional policies with respect to discipline and falsifying medical records are wholly unsupported by fact. Plaintiffs offer no relevant facts to support a conclusion that the Medical Defendants were in charge of disciplining inmates. In fact, such allegations do not even appear in the Second Amended Complaint. Additionally, an isolated occurrence of one or two employees allegedly falsifying a medical record does not establish a policy, practice, or custom of the same. *Fletcher v. O'Donnell*, 867 F.2d 791 (3d Cir. 1989) ("A single incident by a lower level employee acting under color of law . . . does not suffice to establish either an official policy

---

[11] The Medical Defendants challenge whether the alleged policies caused Black's injuries because Black received medical treatment at the jail. However, given that Plaintiffs argue that Black was not treated by qualified personnel from April 19, 2012 until April 30, 2012 as a result of these policies notwithstanding "classic" symptoms of pneumonia, the Court finds that this issue must be resolved by the jury as well.

or custom."). As a result, Plaintiffs' claims that ACHS had unconstitutional policies regarding discipline and falsifying medical records are dismissed.

The Medical Defendants also assert that the claims against Dr. Patterson, Dana Phillips, Dr. Solomon, and Kim Mike-Wilson in their official capacities as policymakers should be dismissed because they are duplicative of claims already made against ACHS. (ECF No. 191 at 16). The Court agrees. Because "[a] suit against a governmental official in his or her official capacity is treated as a suit against the governmental entity itself," *Luzerne County*, 372 F.3d at 580 (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991)), these claims are dismissed to the extent that they are asserted against these Defendants in their official capacity,[12] *Snatchko v. Peters Twp.*, 2012 WL 6761369, *11 (W.D. Pa. 2012).

### 2. Dana Phillips

At all relevant times, Dana Phillips was a top officer[13] at ACHS. Plaintiffs offer testimony from Sherry Anderson to challenge the Medical Defendants' motion as to Phillips. According to Anderson, Phillips was personally aware that Black needed medical attention and needed to go to the hospital several days before he was sent.[14] Anderson also testified that she

---

[12] The Medical Defendants do not challenge whether these Defendants are in fact policymakers. The Court notes, however, that state law governs whether an employee is a policymaking official. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 125 (1988) (plurality opinion). This is an issue that must be decided by the court, and not the jury. *See Andrews*, 895 F.2d 1469, 1481 (3d Cir. 1990) ("In looking to state law, a court must determine which official has final, unreviewable discretion to make a decision or take an action."). Plaintiffs bear the burden of establishing that the Defendants are policymakers. *Baker v. Monroe Twp.*, 50 F.3d 1186, 1192 (3d Cir. 1995). As it stands, the Court is highly skeptical that all of these Defendants meet the criteria to be considered policymakers.

[13] The Second Amended Complaint asserts that Phillips was the President of ACHS, (ECF No. 140 at ¶ 10), however, the Medical Defendants' Motion for Summary Judgment asserts that Phillips was the Chief Operating Officer at ACHS (ECF No. 190 at ¶ 7).

[14] Plaintiffs cite to a deposition from February 8, 2013 on this point. (ECF No. 209-14 at 14). The Court notes that at her deposition on March 14, 2014, when asked if Phillips made any decisions in this case, Anderson replied, "Not that I know of." (ECF No. 209-16 at 11). Obviously, this presents an issue of

had previously complained to Phillips about the medical care inmates were receiving in the jail, but Phillips told her to shut her mouth and threatened to fire her. Because genuine issues of material fact exist as to whether Phillips committed acts or omissions amounting to deliberate indifference of Black's serious medical needs, she is not entitled to summary judgment.

### 3. Dr. Michael Patterson

Dr. Michael Patterson, Sr. was Chief Medical Officer at ACHS during the relevant time period. Plaintiffs contend that on April 27, 2012, he signed a document indicating that Derek Black had a probable pneumothorax (collapsed lung), but did not send Black to the hospital until April 30, 2012. In his deposition, Dr. Patterson stated that he could not explain why the document was dated April 27, 2012, that he did not recall having this information on April 27, but if he had the information, he would have sent Black to the hospital. Because genuine issues of material fact exist as to whether Dr. Patterson committed acts or omissions amounting to deliberate indifference of Black's serious medical needs, he is not entitled to summary judgment.

### 4. Dr. Miguel Solomon

Dr. Solomon testified that he signed progress notes of patients that he never examined despite being uncomfortable about doing so because he was following instructions from "Dr. Patterson and everybody." Dr. Solomon signed a medical record on April 28, 2012 indicating that he saw Black on 4/28/12 and that he ordered follow-up treatment for two days later on 4/30/12. In his deposition, Dr. Solomon admitted to signing the record, but denied ever actually examining Black or giving the order for follow-up treatment. However, in an interrogatory, the Medical Defendants admitted that this same record indicates Black "was seen" by Dr. Solomon on April 28, 2012. Thus, because genuine issues of material fact exist as to whether Dr.

---

credibility. However, for purposes of this motion, this fact must be construed in favor of the non-movants.

Solomon committed acts or omissions amounting to deliberate indifference of Black's serious medical needs, he is not entitled to summary judgment.

### 5. Valerie Slepsky, CNA

With regard to Valerie Slepsky, a certified nursing assistant, there are several issues of material fact preventing summary judgment. Slepsky testified at her deposition that she never evaluated Black, however, Sherry Anderson testified that Slepsky did. Anderson went on to state that after evaluating Black, Slepsky fabricated a story, telling the other medical personnel that Black was faking his injuries. Additionally, Plaintiffs contend that Slepsky's testimony that she never went to the DHU to make an assessment of a patient was contradicted by the testimony of a C.O, however, this is disputed by the Medical Defendants.

There is also a dispute surrounding the April 28, 2012 medical record discussed above. The record indicates that Slepsky took Black's vitals and Dr. Solomon ordered that Black be seen for follow-up treatment on April 30, 2012 (although Dr. Solomon denies he gave this order). Plaintiffs contend that Black was never examined on April 28, 2012 and that Slepsky falsified this record. Plaintiffs assert that there is a discrepancy in the prison logs indicating that Black may never have left his cellblock on April 28, 2012. Further, Dr. Salomon claims that while he signed this record, he did not order the follow-up treatment. Defendant Chris Marsh testified that Slepsky's handwriting was on this record. Plaintiffs' expert also opined that the vitals on this record are inconsistent with earlier records. Thus, as a result of the above, Plaintiffs assert they are entitled to an inference that Slepsky falsified the record. Lastly, Plaintiffs claim that on multiple occasions, Slepsky was disciplined at ACHS for acting outside the scope of her medical authority. Consequently, because genuine issues of material fact exist as

to whether Slepsky committed acts or omissions amounting to deliberate indifference of Black's serious medical needs, she is not entitled to summary judgment.

### 6. Chris Marsh, R.N.

Chris Marsh claims that she saw Black in the infirmary on April 28, 2012, though she was uncertain whether she spoke to Black. However, Sherry Anderson testified that Marsh did not personally assess Black on this date, and instead, sent Slepsky, "who is not qualified to decide" whether inmates need medical treatment. Anderson claims that Marsh sent Slepsky because Marsh was lazy and wouldn't go herself.[15] Defendant Mike-Wilson testified that under the circumstances, it would be inappropriate for Marsh to rely on Slepsky without personally observing Black. Plaintiffs also assert that Chris Marsh may have been involved in falsifying the medical records from April 28, 2012 due to "the entire record of interaction" between Marsh, Slepsky, and Black. Because genuine issues of material fact exist as to whether Marsh committed acts or omissions amounting to deliberate indifference of Black's serious medical needs, she is not entitled to summary judgment.

### 7. Kim Mike-Wilson, R.N.

Kimberly Mike-Wilson denies that Anderson complained to her that Black was coughing blood, however, Anderson testified otherwise. Additionally, Anderson stated that she complained to Mike-Wilson about Slepsky practicing medicine outside of her scope, which resulted in Mike-Wilson demoting Anderson. Plaintiffs argue that Mike-Wilson received complaints about Slepsky from several people, including Dr. Aiken, but Mike-Wilson took no action. Mike-Wilson also confirmed that there was a priority list at the infirmary, which

---

[15] The Medical Defendants request that certain "Distraction Allegations" about Marsh and Slepsky in the Second Amended Complaint should be dismissed. (ECF Nos. 140 at ¶¶ 39-48 and 191 at 18). The allegations assert that Marsh is lazy and Slepsky is a bully and insubordinate. While said averments could have been more carefully drafted by Plaintiffs, the Court finds that they are relevant to Plaintiffs claims, so they will not be dismissed.

Plaintiffs contend would have contained Black's name. Because genuine issues of material fact exist as to whether Mike-Wilson committed acts or omissions amounting to deliberate indifference of Black's serious medical needs, she is not entitled to summary judgment.

In conclusion, the Medical Defendants' motion for summary judgment is denied in its entirety as there are genuine issues of material fact as to each individually named Medical Defendant.

## V.    CONCLUSION

Based on the foregoing, the County Defendants' motion for summary judgment is granted with respect to Stickman but denied with respect to Allegheny County. The Medical Defendants' motion for summary judgment is granted insofar as Plaintiffs' claims that ACHS had unconstitutional policies regarding discipline and falsifying medical records are dismissed, and any claims against Dr. Patterson, Dana Phillips, Dr. Solomon, and Kim Mike-Wilson in their official capacities as policymakers are dismissed, but the remaining portion of the motion is denied. An appropriate Order follows.

By the Court:

s/ Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

cc: all registered counsel via CM-ECF

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


DEBRA BLACK; EARL BLACK,                    )
*Administrators of the Estate of*           )
DEREK E. BLACK,                             )
                                            )
              Plaintiffs,                   )
                                            )
                                            )
       v.                                   )
                                            )        Civil Action No. 2:13-cv-0179
                                            )
ALLEGHENY COUNTY; ALLEGHENY                 )        United States Magistrate Judge
CORRECTIONAL HEALTHSERVICES;                )        Cynthia Reed Eddy
WILLIAM STICKMAN, III; DANA                 )
PHILLIPS; MICHAEL PATTERSON, M.D.;          )
KIM MIKE-WILSON, R.N.; CHRIS                )
MARSH, R.N.; VALERIE SLEPSKY,               )
                                            )
              Defendants.                   )

## ORDER

**AND NOW,** this 30th day of October, 2014, having considered the County Defendants'

Motion for Summary Judgment, the Medical Defendants' motion for summary judgment, as well

as all of the documents submitted by the parties in connection therewith, and for the reasons set

forth in the accompanying Memorandum Opinion, the court enters the following Order:

**IT IS HEREBY ORDERED** that the County Defendants' Motion for Summary

Judgment (ECF No. 187) is **GRANTED** with respect to William Stickman, III and **DENIED**

with respect to Allegheny County.

**IT IS FURTHER ORDERED** that the Medical Defendants' Motion for Summary

Judgment (ECF No. 190) is **GRANTED** insofar as (1) Plaintiffs' claim that ACHS had an

unconstitutional policy regarding discipline is dismissed; (2) Plaintiffs' claim that ACHS had an

unconstitutional policy with respect to falsifying medical records is dismissed; and (3) any claims from Plaintiffs against Dr. Patterson, Dana Phillips, Dr. Solomon, and Kim Mike-Wilson in their official capacities as policymakers are dismissed. The remaining portion of the Medical Defendants' Motion for Summary Judgment is **DENIED.**

A status conference will be scheduled via separate Order.

By the Court:

<u>s/ Cynthia Reed Eddy</u>
Cynthia Reed Eddy
United States Magistrate Judge

cc: all registered counsel via CM-ECF